(6 App. Div. 55.)

SHANGLE v. HALLOCK et al.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. WILLS—CONSTRUCTION—VESTED REMAINDER.

Testator devised his real estate to his executors, to pay the income to his widow for her support for life, or until she should marry again, and directed that at the death of his wife or her remarriage, in case testator's youngest child then living should have arrived at the age of 21 years, or on the happening of either event, the estate should be divided between his four children, naming them, but, in case any of them should die without issue before the youngest should arrive at the age of 21 years, then the portion of such deceased child or children should be equally divided among the survivors. *Held*, that the interest of each child vested on the death of testator; and where a married daughter died after the death of testator, but before the death of the widow, leaving a child, who also died before the widow, the husband of such daughter was entitled to her share of the estate.

2. SAME—ACCUMULATION OF INCOME.

In such case the income of the widow received in excess of the amount expended by her for her support belonged to her estate, and the husband of the deceased daughter was not entitled to share therein.

Appeal from special term, Kings county.

Action by Stephen Shangle against Daniel L. Hallock, as executor, and others, to obtain a construction of the will of Joseph Shaw, deceased. From the decree construing the will, both plaintiff and defendants appeal. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, and HATCH, JJ.

William C. De Witt, for plaintiff.

Thomas McMahon (John A. Straley, of counsel), for defendants.

CULLEN, J. This action is brought by the plaintiff, both individually and as administrator of Caroline Shangle, deceased, to obtain a construction of the will of Joseph Shaw, and to recover the share of the said Caroline in the estate of said Joseph Shaw. Joseph Shaw died, testate, on the 21st day of March, 1846, leaving, him surviving, his widow, Sybil Shaw, and four children. The portion of the will of said Joseph Shaw material to this controversy is as follows:

"Fourth. I give, bequeath, and devise all my real estate situated in the village of Williamsburg, Kings county, and known on a map made by Charles Loss, city surveyor, 1807, as 'Lot No. 217,' and my real estate, known as 'No. 120 Allen Street,' in the 10th ward of the city of New York, to my executrix and executor, hereinafter named, for the uses and purposes following, to wit: To lease, let, bargain, sell, grant, and convey the same in their discretion, and with the annual proceeds thereof, or such much of the proceeds as may be necessary, to pay the annual interest which may from time to time arise and become due on said bond and mortgage, and the balance of such annual

income to pay over to my beloved wife, for her support and the support and education of my children, and the survivors of them, the management and guardianship of which children are hereby confided to my said wife; but my said wife is not, in case she should remarry, to receive thereafter any support or maintenance from the income of my said property, but the whole of such income, after the payment of the aforesaid annual interest, is to be applied for the support and maintenance of my four children, and the survivors and survivor of them, until they shall be able and capable of taking care of and fully supporting themselves.

"Fifth. At the decease of my said wife or her· remarriage, in case my youngest child then living shall have arrived at the age of twenty-one years, on the happening of such event, or either thereof, I desire that the balance and remainder of my estate, both real and personal, be divided between my four children, Sarah C., William, Caroline, and Elizabeth H., share and share alike. But, in case any of them shall die without children or issue before the youngest of my said children shall arrive at the age of twenty-one years, then, and in such event, the portion of such deceased child or children is to be divided equally among the survivors or survivor and the heirs of such of them as shall have died, leaving issue of their own bodies, per stirpes and not per·capita."

The widow, Sybil Shaw, died, testate, on the 13th day of May, 1892, not having remarried. The plaintiff married Caroline Shaw the 4th day of November, 1858. Caroline Shangle died, intestate, on the 11th of April, 1880, leaving, her surviving, the plaintiff (her husband) and a child, Caroline L. Shangle, her only heir at law. On July 23, 1882, Caroline L. Shangle died, intestate, without issue, and leaving the plaintiff (her father) her only heir at law. All the testator's children became of age before the death of Caroline Shangle.

The plaintiff claims to have acquired, either by descent from his wife, Caroline Shangle, or as her administrator, the fourth part of the estate of Joseph Shaw. This claim the court at special term decided in his favor, and from that part of the judgment the defendants appeal. The plaintiff further claimed to recover one-fourth of the savings accumulated by the widow during her life out of the income of the trust property. This claim the court at special term rejected, and from the judgment in this respect the plaintiff appeals.

It is first to be observed that the primary gift, the direction to divide at the death or remarriage of the testator's widow, is to the testator's four children, by name, share and share alike. The gift was, therefore, not to a class, but to each child distributively. Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184; Hoppock v. Tucker, 59 N. Y. 202. Hence, if the gift was contingent on the legatee or devisee living till the time of division, the share of the child dying before that time did not go to the survivors. Nor, in the present case, did the share pass under the gift over, for Caroline did not die under 21 years or without issue. As to this share (assuming the devise was contingent) the deceased died intestate. It therefore descended to the testator's heirs at law, his four children, including the plaintiff's wife. The plaintiff has unquestionably acquired by inheritance the interest of his wife in that share. So that the debatable question in this case is not whether the plaintiff is entitled to a fourth or to none of the tes-

tator's estate, but whether he is entitled to a quarter or a sixteenth of it. The disposition of this question depends wholly upon the determination of the further question whether the share of the daughter Caroline was, at the time of her decease, vested, or contingent upon her surviving the death or remarriage of her mother, the testator's widow. We concede the general rule asserted by the defendants' counsel, that "where there is no gift, but a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting will not take place until that time arrives." Warner v. Durant, 76 N. Y. 133; Smith v. Edwards, 88 N. Y. 92; Shipman v. Rollins, 98 N. Y. 311; Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184. But, though this is the general rule, it is subject to many exceptions.

In Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, the testator provided for a somewhat elaborate trust to terminate on his wife's death, or upon his youngest child reaching the age of 21 years in case the wife was previously deceased; and upon either of such events he directed his trustees to divide all his estate, real and personal, among his children, share and share alike, deducting all advances made, so that each of his children should have an equal share of the estate. The testator had previously authorized an advance of $3,000 to each child upon its marriage or arrival at the age of 21 years. This direction to divide was the only gift; yet the court held the remainder vested in each child on the death of the testator. The court construed the provision for the advancement to the children, and a direction that the "profits should be invested for the benefit of my said children," as well as other expressions in the will, as tending to show an intent on the part of the testator that his children's share should vest immediately upon his decease. Probably the most influential consideration in the disposition of the case is found in the concluding paragraph of the opinion, where it is said:

"This construction also prevents the disinheritance of issue of any child who may marry and die before the expiration of the trust period,—a consequence which no one can doubt the testator never intended."

In Re Tienken, 131 N. Y. 391, 30 N. E. 109, the same question again arose, and the decision followed that of Goebel v. Wolf. In relation to the general doctrine, Judge Finch writes:

"We have heretofore said that the rule of construction founded upon a gift flowing only from a direction to divide has many exceptions, and is to be used as an aid to ascertain the intention, not as a force to pervert it."

In Re Young, 145 N. Y. 535, 40 N. E. 226, the executors were directed to raise and invest for the widow a fund of $4,000, the income payable to her during life, and on her decease the said amount to be equally divided among the testator's children, naming them. The residuary clause was as follows:

"I give to my children, Amos J. Hurlbut, Mary Tifft, and Ellen Close, within one year after the aforesaid sale of real estate and the reservation of the aforesaid $4,000 for the use of my wife, the whole balance of my property not hereinbefore devised, to be equally divided between them."

It was there held that the general rule did not apply, and that the children could be considered as taking, under the residuary clause, the remainder in the $4,000 after the widow's decease, and that the direction to divide was a mere postponement of the possession, for the purpose of letting in the provision for the widow. In the opinion delivered in that case, Judge Finch, again referring to the general rule applicable where the only gift is a direction to divide, says:

"We have steadily maintained that the rule referred to is not inflexible or arbitrary, and is to be applied in subordination to the testamentary intention, and not as destructive of it. In the present case, we must therefore take into account the other provisions of the will and the general purpose deducible from its terms."

In the light of this recent and unbroken line of authorities in the highest court of this state, we think it may safely be affirmed that the court, in construing a will, will lay hold of any expression or provision of the will that can properly be used for the purpose, to prevent the disinheritance of the issue of the primary object of the gift in case of that object dying before the time for distribution; and we are clear that the case at bar falls, not within the general rule, but within the exception; that the remainders given the testator's children were vested, not contingent, and subject to be divested only on the contingency provided in the gift over. A construction of a will that prevents intestacy is to be preferred to one that creates intestacy, and for this reason there must be a clear intention indicated to postpone the vesting under residuary bequests. 1 Jarm. Wills, 850. If the remainder of Caroline was contingent, intestacy has occurred in this case. The children among whom the division is to be made are mentioned by name. In this respect the present case is stronger than those of Goebel v. Wolf and In re Tienken. The construction contended for by defendants disinherits the issue of any child who may die before the time of the division.

Lastly, and the controlling consideration with us, is the gift over in case of any child dying without issue before the youngest child shall have arrived at 21 years. The general doctrine is that "where a devise standing alone would be contingent, yet, if it be followed by a limitation over in case he die under age, * * * the interest in question is construed to vest instanter." 1 Jarm. Wills. 810. The same rule applies to bequests of personalty. Id. 857. And in certain cases, as when the gift over is to the heir, the gift over alone creates a devise by implication. Id. 533. We shall not, however, review the cases on this subject, because we think the terms of the gift over in this case are such as to leave no room for substantial doubt as to the intention of the testator.

The testator directs that, in case of the death of a child without issue before the youngest child shall have reached 21, the portion of the deceased child is to be divided, not only among the survivors, but also the heirs of such of them as shall have died leaving issue of their bodies. Hence, if Sarah had died without issue

before the time named, and William had died subsequently, leaving issue, the issue of William would take their proportion of the share of Sarah in perfect equality with the two surviving children, the testator having been careful to provide for their rights in such a case; but in the same case, according to the construction contended for by the defendants, the children of William would lose their parent's share,—the whole share, in the opinion of the defendants; three-quarters of the share, in our opinion. It is impossible to believe that the testator should have intended to thus secure the interests of the issue of his children in case of the contingency provided in the gift over, and at the same time intended, in case of the death of their own parent, they should be deprived of all the parent's share in his estate. Theoretically, a testator might have intended such a will, but no such unnatural and unreasonable intent should be attributed to him except by virtue of language which admits of no misconstruction.

This will is carelessly drawn, and, under one construction of the fifth clause, it may be that the provisions of the will, except the trust for the wife, are bad. We shall not discuss the question, as it has not been raised by counsel; and, if the will were held to be void, it would work no change in the judgment below. The result would be the same. But we think the intention of the testator clear; that is to say, his wife was to have during her widowhood the whole income of his property. Upon her death or remarriage, the property was to go to his four children in equal shares. The interest of each of those children in his or her share was to be absolute, save only in the contingency provided for in the will, in which case it was to go to the other children, or the issue of deceased children. The decision of the learned court, that the share of Caroline was vested at her decease, was therefore correct.

We think the claim of the plaintiff on this appeal requires no elaborate examination. The language of the will is clear. The balance of the income was to be paid to the widow for her support, charged only with the support and education of the children until they were able to take care of themselves. The widow could expend the whole income if she chose, and, if she saw fit to live more cheaply, the savings were wholly her own.

The judgment appealed from should be affirmed, with costs to all parties who have appeared, to be paid out of the fund. All concur.